IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMBER LINN BEISSWANGER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO. 20-5212 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                    October 12, 2021

Amber Linn Beisswanger ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review and the Commissioner has responded to it. For the reasons set forth below, Plaintiff's request for review is denied.

## I.   PROCEDURAL HISTORY[1]

On July 26, 2017, Plaintiff applied for DIB, alleging disability, because of physical and mental health impairments, that commenced on February 28, 2014. R. 12. The claim was denied, initially, and upon reconsideration; therefore, Plaintiff requested a hearing. *Id.* On July 25, 2019, Plaintiff appeared before Shawn Bozarth, Administrative Law Judge ("the ALJ"), for a video hearing; Plaintiff was in Reading, Pennsylvania and the ALJ was in Towson, Maryland. *Id.* Plaintiff, represented by an attorney, and Richard Riedl, a vocational expert, ("the VE") testified

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Statement of Issues and Brief in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), and the administrative record. ("R.").

1

at the hearing. *Id.* On August 9, 2019, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 50-59. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on August 19, 2020, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on April 10, 1973, was 40 years old on her alleged onset date. R. 22. She last worked full-time in 2014; however, in 2017, 2018 and 2019, she performed seasonal tax return processing work for an accounting firm. R. 32-36. Plaintiff lives with her husband, a landscaper, who does not work during the winter months. R. 36.

B.   <u>Plaintiff's Testimony</u>

Plaintiff's primary impairments concern her mental health. R. 35. She suffers from social

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

anxiety, which manifests itself whenever she goes out in public; Plaintiff copes with her anxiety by clenching her feet and jaw. R. 50. Plaintiff suffers panic attacks once or twice each week; they vary in length from 10 minutes to an hour. R. 50-51. The onset of a panic attack is unpredictable; Plaintiff copes with one by screaming, crying, and going to bed. R. 51. She has trouble concentrating on producing invoices for her husband's landscaping business, and preparing to go food shopping take excessive amounts of time, because Plaintiff loses focus. R. 49-50. Plaintiff has been hospitalized numerous times for her mental health problems; the first time was when she was 14 years old, the last time was in 2011. R. 44. She takes numerous medications for her mental health condition, and for Hashimoto's disease, an autoimmune disease; her main side effect from these medications is fatigue. R. 37-38.

Despite her limitations, Plaintiff has successfully worked for an accounting business during tax season. She typically works from the first week in February through April 15 or 17. R. 32. The hours Plaintiff works for this employer increase as tax season progresses; she begins working only a few hours a week, and, by the end, she works more than 40 hours a week. R. 33. When she is working during tax season, Plaintiff is able only to work, eat dinner and go to bed; her husband performs all household chores. R. 48. Plaintiff's concentration problem has affected her performance in this job; a couple times each week, she is told she has made an error. R. 48.

C.    Vocational Testimony

The VE characterized Plaintiff's past job as an administrative assistant as skilled,[3]

---

[3] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. … Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

sedentary[4] work and her sample worker job as semi-skilled,[5] light[6] work. R. 54, 56. The ALJ asked the VE to consider a person of Plaintiff's age, education and past work experience, who has the following nonexertional limitations: the ability to perform low stress work, meaning a job that is separate and apart from any assembly line, piece work or numerical production quota; any job should require no more than one month of training; the ability to make occasional decisions, tolerate occasional changes in workplace setting and routine; and the ability to tolerate occasional contact with supervisors, coworkers or customers. R, 57-58. The VE stated that this person could not perform any of Plaintiff's past jobs, because the training limitation precludes any skilled or semi-skilled work. R. 58. However, this individual could perform the following light, unskilled[7] jobs: (1) office helper (330,000 positions in the national economy); housekeeping cleaner (400,000 positions in the national economy); and production inspector (135,000 positions in the national economy). R. 58-59. The VE was then asked to consider a person with the same limitations as in the first hypothetic but with the additional limitation of being off-task more than 10% of the workday and absent from work more than one day each month. R. 59. The VE responded that either limitation precluded any work. R. 60.

### III.     THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

    Security Act through September 30, 2021.

2.  [Plaintiff] has not engaged in substantial gainful activity since February 28, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  [Plaintiff] has the following severe impairments: major depressive disorder, generalized anxiety disorder, and attention deficit disorder (20 CFR 404.1520(c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she would be capable of performing a low stress job, which is a job in a goal oriented environment that is separate and apart from any assembly line, piece work, or numerical production quota pace. [Plaintiff] could perform jobs that would require only a short demonstration or training of no more than one month in duration. She can perform jobs that require occasional decision making, occasional changes to workplace routine, and a job in which she would have only occasional contacts with supervisors, coworkers, and customers.

6.  [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7.  [Plaintiff] was born on April 10, 1973 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not she has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10.      Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).

      11.      [Plaintiff] has not been under a disability, as defined in the Social Security Act, at any time from February 28, 2014 through the date of this decision (20 CFR 404.1520(g)).

R. 14-17, 22-24.

## IV.    DISCUSSION

A.    Standard of Review

      Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.   Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other light jobs that exist in the national economy and, hence, was not disabled. R. 12-24.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by failing to:  (1) include in his assessment of her residual

functional capacity ("RFC") being off-task more that 10% of the workday and missing more than one day of work per month; and (2) afford controlling weight to the opinions of her treating physician, Eugene R. Shippen, M.D.  Pl. Br. at 5-6.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-4.  This court finds that Plaintiff's arguments lack merit.

1. The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff asserts that the ALJ erred reversibly by failing to include in his RFC assessment the limitations that Plaintiff would be off-task more than 10% of each workday and would miss one workday each month, due to her impairments.  Pl. Br. at 5.  This claim lacks merit, because the ALJ provided adequate reasons to reject these asserted limitations.

In assessing Plaintiff's RFC, the ALJ summarized and explicitly considered all evidence in the record, including opinion evidence.  R. 18-22.  The ALJ found that certain evidence supported his RFC assessment, which did not include any off-task time or anticipated missing of work.  Notably, the ALJ relied upon the opinions of:  (1) psychological consultant, Fran M. Mrykalo, Ed.D, who did not include said limitations; and (2) consultative psychological examiner, Amanda Koehan-Dewey, Psy.D, who also omitted these limitations.  R.19-21.  The opinion evidence the ALJ relied upon is certainly more than a scintilla; hence, it constitutes substantial evidence to support the ALJ's decision not to include in Plaintiff's RFC the precise limitations in question.  *Biestek*, 139 S. Ct. at 1154.  Hence, Plaintiff's first claim fails.

2. The ALJ Properly Considered the Dr. Shippen's Opinions

Next, Plaintiff argues that the ALJ erred by failing to afford controlling weight to Dr. Shippen's opinion that Plaintiff would miss three to four days of work per month, due to her impairments. Pl. Br. at 6.  As explained below, this claim lacks merit.

Plaintiff filed for disability benefits on July 26, 2017.  R. 12.  This date is important,

because it means that the Administration's new regulations concerning medical opinions apply to her claim. *See* 20 C.F.R. § 404.1520(c) (2017) (stating that the new regulations apply to all disability claims filed on or after March 27, 2017). The new regulations no longer afford any special weight based upon the source of a medical opinion. *Compare* 20 C.F.R. § 404.1520c(a) (2017), *with* 20 C.F.R. § 404.1527(c)(2) (2016). Indeed, the ALJ could not properly accord controlling weight to Dr. Shippen's medical opinions. § 404.1520c(a). Instead, Dr. Shippen's opinions – like all medical opinions – must be assessed by considering the following factors: supportability, consistency, the doctor's relationship with the claimant, specialization, and other factors. § 404.1520c(c). Of these factors, supportability and consistency are the most important. § 404.1520c(a).

Plaintiff's claim fails because the new regulations apply and the ALJ could not afford controlling weight to Dr. Shippen's opinion that Plaintiff would miss three to four days of work per month. § 404.1520c(a). Instead, the ALJ considered the entire record and found Dr. Shippen's opinion, that Plaintiff would suffer excessive absences, was not consistent[8] with the record, especially in light of her admitted ability to work a seasonal job, sometimes in excess of 40 hours per week. R. 22. Under the regulations, the lack of consistency with the record is an adequate reason not to accept Dr. Shippen's opinion concerning excessive absences as part of Plaintiff's RFC. § 404.1520c(c)(1). Therefore, no error occurred.

An implementing Order and Judgment Order follow.

---

[8] Although the ALJ stated that lack of supportability was the problem with Dr. Shippen's opinion, R.22, it appears that the problem was really a lack of consistency, as those terms are defined in the new regulations. *Compare* § 404.1520c(c)(1) (supportability refers to the evidence the medical source identifies as supporting his or her opinion), *with* § 404.1520c(c)(2) (consistency refers to how consistent the medical source opinion is with the other evidence in the record).